**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 27 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

SHAWN MILLET,

      Defendant - Appellant.

No. 99-4105
(D.C. No. 98-CR-610-001-C)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **KELLY**, and **MURPHY**, Circuit Judges.[**]

Mr. Shawn Millet appeals from the sentencing court's imposition of an upward departure of seven offense levels for extreme psychological injury under U.S.S.G. § 5K2.3. Mr. Millet was charged with witness tampering, 18 U.S.C. § 1512, but pled guilty to the lesser crime of misprision of felony, 18 U.S.C. § 4. At sentencing, the court determined that Mr. Millet's offense level was 12 with a

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause is therefore ordered submitted without oral argument.

criminal history category of I, leading to a possible sentencing range of 10 to 16 months. Sent. Tr. at 12-13. In deciding to depart upward, the court then determined that the underlying criminal conduct was analogous to assault with intent to commit murder and applied the base offense level of 28 from U.S.S.G. § 2A2.1. § 2X4.1 required that the offense level for misprision be 9 levels lower than the base level for the underlying crime, and the court arrived at a final offense level of 19. Sent. Tr. at 20. This resulted in a guideline range of 30-37 months, and the court sentenced Mr. Millet to the statutory maximum of 36 months imprisonment, as well as 12 months supervised release and $89,106 in restitution. On appeal, Mr. Millet argues that the district court erred in applying the Sentencing Guidelines. Our jurisdiction[1] arises under 18 U.S.C. § 3742(a) and we affirm.

## Background

Jason Millet, defendant's brother, was hired by a third party to convince a confidential informant, Linda Gren Hadden, not to cooperate with an ongoing

---

[1]Mr. Millet's notice of appeal bears the district court docket number of a dismissed case (98 CR 396 C) rather than the number from the case in which the judgment was entered (98 CR 610 C). However, the docketing statement included a copy of the judgment from the correct case and we therefore have jurisdiction. See United States v. Escareno, No. 94-6232, 1995 WL 634171, * 1 n.2 (10th Cir. Oct. 30, 1995) (unpublished).

drug investigation.  On July 12, 1998, Jason and Shawn, wearing overalls and masks, rode bicycles to Ms. Hadden's apartment.  Shawn was aware that Jason was carrying a loaded gun in order to scare Ms. Hadden.  After arriving at the apartment, Jason saw Ms. Hadden through a window and fired between five and seven shots into the apartment.  The two brothers then left the scene, and later wiped the gun clean of fingerprints and took it apart.  They were apprehended soon after.

Ms. Hadden was hit five times: in the face, neck, shoulder, hip, and left arm.  She required extensive surgery and was hospitalized for six weeks following the surgery.  The following paragraphs from the presentence report describe the resulting impact:

> 15. As a result of damage to her face, the victim lost most of her tongue and now speaks with an impediment. Her mandible is completely destroyed, and she has very little chin. . . . Because of scarring around her lips, she has difficulty eating and drinking without drooling.  All of her lower teeth were blown out, and all but three were replaced during surgery.  In summary, the victim was severely damaged by these injuries and reported that she does not want to be seen in public. . . .
>
> 16.   Ms. Hadden is living with acquaintances who are helping her.  She reported taking five types of medication in order to sleep and help control the constant pain.  She indicated having severe nightmares since the attack occurred.
>
> 17.  Emotionally, this experience has been devastating. Ms. Hadden indicated that some children screamed when

they saw her in the hospital following surgery. She
suffered severe psychological distress, including deep
depression, and has contemplated suicide.

PSR (II R.) at 5.


Discussion

We review the district court's decision to upwardly depart from the
Sentencing Guidelines under a unitary abuse of discretion standard. See Koon v.
United States, 518 U.S. 81, 99 (1996); see also United States v. Collins, 122 F.3d
1297, 1302 (10th Cir. 1997). In doing so, we evaluate four components: (1)
whether the departure is based upon a permissible departure factor; (2) whether
the departure factors relied on by the district court remove the defendant from the
heartland of the Guidelines; (3) whether the departure is sufficiently supported by
the facts in the record; and (4) whether the degree of departure is reasonable.
See United States v. Bartsma, 198 F.3d 1191, 1195 (10th Cir. 1999)

Here, the first factor is clearly met by the inclusion of § 5K2.3 in the
Guidelines as a permissible grounds for departure. Id. In regards to the second
factor, Mr. Millet argues that his conduct did not cause the psychological trauma,
so he should not be responsible for it. Yet the court noted that Shawn knew his
brother intended to use a gun to scare Ms. Hadden. Therefore, it was not
unforeseeable that psychological damage would occur. "This is the unusual kind

of case where misprision of a felony does not consider [the psychological damage to the victim]. It takes it out of the heartland, and I am going to depart." Sent. Tr. at 19. We give substantial deference to this finding, see Collins, 122 F.3d at 1303, and hold that the district court was correct in finding that the conduct removed the crime from the heartland.

Moving on to the third part of this analysis, the record is replete with evidence of the extreme nature of Ms. Hadden's psychological injuries. § 5K2.3 lays out the appropriate standard in this regard.

> [P]sychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns.

In addition to the evidence related in the presentence report, the court also noted the extreme psychological impact on Ms. Hadden from losing her job, losing her home because of inability to make payments on it, inability to appear or eat in public because of her appearance, and other impacts of the serious wounds she received. See Sent. Tr. of Jason Millett (No. 99-4115, V R.) at 18-22 (incorporated by reference into Shawn Millet's sentencing – judge noting that "I would rely basically on the same evidence that I stated earlier in the sentencing of Mr. Jason Millett." Sent. Tr. at 13). This evidence was clearly sufficient to

support the departure.

Mr. Millett also challenges whether the degree of the departure – seven offense levels – was reasonable. In particular, he argues that "[s]uch a drastic departure is unreasonable in light of the facts that the psychological trauma caused to the victim was caused by [Jason Millett] . . . ." Aplt. Reply Br. at 5. He also contends that he attempted to withdraw from the conduct; yet his participation is well documented in the district court's findings. Review of the district court's degree of departure is deferential. See United States v. Whiteskunk, 162 F.3d 1244, 1253 (10th Cir. 1998). A district court must "specifically articulate reasons for the degree of departure using any reasonable methodology hitched to the Sentencing Guidelines, including extrapolation from or analogy to the Guidelines." Bartsma, 198 F.3d at 1196 (citation and internal quotations omitted). In the present case, the sentencing court specifically analogized to the guidelines, based upon the underlying crime. We cannot say that such an analogy was unreasonable.

Finally, Mr. Millett argues that we must remand for resentencing because the district court failed to make factual findings as to the nature of "the psychological injury 'normally resulting from the commission of the offense.'" United States v. Okane, 52 F.3d 828, 835 (10th Cir. 1995) (citation omitted). While this is the usual procedure for finding a violation of § 5K2.3, we note that

the failure to make such factual findings does not always mandate resentencing. See United States v. Mitchell, No. 96-6292, 1997 WL 325920, at *3-4 (10th Cir. June 16, 1997) (unpublished); United States v. Atkinson, No. 94-4229, 1995 WL 620142 (10th Cir. Oct. 16, 1995) (unpublished). "'[W]e should not remand if we are satisfied ... that the district court would impose the same, reasonable sentence if we required it to articulate [its reasons] with the detail specified in Jackson and its progeny.'" United States v. Tsosie, 14 F.3d 1438, 1444 (10th Cir. 1994) (citation omitted). There is no question in our minds that the psychological damage to Ms. Hadden was far beyond the normal trauma present in a conviction for misprision of felony, and the district court would merely impose the same sentence again. Therefore, remand is unnecessary.

AFFIRMED.


Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge